**LEE LITIGATION GROUP, PLLC**
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

300 W 110TH 19B LLC,

    Plaintiff,

-against-

BOARD OF MANAGERS OF TOWERS ON THE PARK CONDOMINIUM and JOHN DOES 1-10

    Defendants.

**Case No.:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff 300 W 110TH 19B LLC ("Plaintiff"), by and through its undersigned attorneys, on behalf all others similarly situated, hereby files this Class Action Complaint against Board of Managers of Towers on the Park Condominium and JOHN DOES 1-10, the members of the Board of Managers in their individual capacity, and alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff alleges that Defendants have breached their fiduciary duty to, and contract with, Plaintiff and other Towers on the Park Condominium owners and residents by leasing the

1

complex's limited number of parking spots at below-market rates, despite condominium by-laws requiring that they be rented at market rates.

2. As a result of this breach, parking-generated revenue is lower than it would have been, which has, in turn, caused higher common charges to building owners and residents than would have been needed had parking spots been rented at market rates.

3. On information and belief, members of the Board of Managers have been allotted parking spots and therefore benefit personally from the breach of fiduciary duty alleged herein.

4. Plaintiff seeks injunctive relief compelling Defendants to begin leasing available parking spots at market rates. Plaintiff also seeks compensatory damages for himself and a Class of other Towers on the Park residents in order to compensate them for the higher common charges they have incurred as a result of the below-market parking revenue caused by Defendants' breach. Plaintiff further seeks attorneys' fees and costs, and pre- and post-judgment interest.

## **JURISDICTION AND VENUE**

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), wherein: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

6. On information and belief, some Class members are former residents of the Towers on the Park who no longer reside in the State of New York.

7. The Court has personal jurisdiction over Defendants engaged in the wrongdoings alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum

contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, thereby rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Defendants' activity within New York State are substantial and not isolated.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

9. Plaintiff is a domestic limited liability company with its principal place of business in New York County. Plaintiff owns one of the apartments in the Towers on the Park Condominium ("the Towers"). The Towers consists of two premises: 300 West 110th Street (Cathedral Parkway), New York, NY 10026 (the "South Tower") and 301 West 110th Street, New York, NY 10026 (the "North Tower"). Between them, the North and South Towers contain approximately 600 apartment units and 100 parking spaces.

10. Defendant Board of Managers of Towers on the Park Condominium ("the Board") is an unincorporated association existing under the laws of the state of New York. It manages the Towers through its administrative office in the South Tower. JOHN DOES 1-10 are the individual members of the Board.

## STATEMENT OF FACTS

11. Plaintiff (or its beneficial owner) has been the owner of an apartment in the Towers since September 2016.

12. The Towers' by-laws provide that "[h]ome owners may apply to lease a parking space in the garage at market rates for a period of up to two (2) years." Those who want, but do

not have, a spot can put their names on a waiting list. *See* **Exhibit A**, a document from the Towers website.

13.     The current monthly rates for a Towers parking space are $177.20 for an unroofed top-level space, $213.87 for a covered mid-level space, $238.31 for a covered lower-level space, and $177.20 for unroofed courtyard level space. *See* **Exhibit A**.

14.     That these rates are all substantially below the market rates required by the Towers' by-laws is readily established by comparing parking rates at the Towers with those for monthly parking at Upper West Side commercial garages. For example, the garage on 50 West 93rd Street charges $799 per month:



15.     The garage on 50 West 97th Street charges $899/month:



16.     The garage on 27 West 105th Street is either $699/month or $6,499 for a year:



17.     Thus, depending on one's framework of comparison, parking spots at the Towers are rented at between $400 and $700 beneath market rates. These figures in fact understate the

5

discrepancy, given that parking spots at the Towers offer the convenience of keeping one's vehicle in one's own apartment complex rather than in a commercial garage that may be many blocks away. That alone significantly increases the parking spots' market value. Given the convenience of in-building parking, the fair market value of parking spots for residents could very well be around $1000.

18.     Renting the parking spots below market rate in contravention of the Towers' by-laws has had a significant impact on the Towers' finances.  Attached as **Exhibit B** is the relevant portion of the Towers' financial statements for 2019 and 2020, prepared by certified accountants. Parking fees brought in $307,059 in 2019 and $321,048 in 2020.  Given that Defendants could have charged <u>at least</u> three times more than they did, that would have been an additional $614,000 in 2019 and $642,000 in 2020.  Common charges those years were $3,305,846 and $3,421,554 respectively.  That means renting the spots at market rates would have allowed the Board to reduce common charges by <u>at least</u> 19% in each of those years—and probably by significantly more, given that this calculation assumes a conservative estimate of the parking spots' market value. **Exhibit C** contains relevant pages from financial statements for 2015-2018 and these reveal the same pattern as 2019 and 2020, proving that charging fair market rates for parking spots would have significantly augmented the Towers' revenue and made a sizeable dent in the common charges paid by owners and residents.

19.     This represents a substantial amount of money to Towers residents, who must pay common charges on top of their mortgages. The Board owes a fiduciary duty to all Towers residents, not just those with the good fortune to have secured heavily subsidized parking spots. The current rental rates mean that the 500 Towers households without parking spots are subsidizing the 100 with them. Nothing gives the Board the authority to enable this state of affairs, which contravenes not only the Board's fiduciary duty to all Towers residents but also the Towers'

express by-laws, which, as shown in **Exhibit A**, require that spots be rented out at market rates. Had Towers residents wanted to change the by-laws, they would have done so.

20. As the result of Defendants' breach of their fiduciary duty, Towers residents without parking spots have been harmed in the amount that their common charges could have been reduced had parking spots been leased at market rates.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings claims for relief for Defendants' breach of their fiduciary duty pursuant to Fed. R. Civ. P. 23, on behalf of itself and all Towers residents who, on or after the date that is six years before the filing of the Complaint, did not lease a parking spot from the Towers ("the Class").

22. Class members are readily ascertainable. Since they are all residents of the Towers, their identify is readily determinable from the records of Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

23. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Since the Towers contains 600 units and 100 parking spots, it is clear that there exist approximately 500 Class members.

24. Plaintiff's claims are typical of claims that could be asserted by all Class members. The relief sought by Plaintiff is typical of the relief that would be sought by all Class members.

25. All Class members were subject to the same unfair practices of Defendants, as alleged herein, of undercharging for parking spots and then requiring those Towers residents who

do not have parking spots to subsidize the difference between the going rate for the spots and their actual market value.[1]

26. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in class action litigation.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Class members would create a risk of inconsistent and/or varying adjudications, establishing incompatible standards of conduct for Defendants. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

---

[1] Non-Class member Tower residents with parking spots have also subsidized the lower parking rates inasmuch as they have paid the higher common charges that these rates have necessitated. But these additional costs are far outweighed by the value of the parking subsidies. Accordingly, these individuals have not been injured by Defendants' policies but, on the contrary, have been advantaged by them. These persons are, therefore, not Class members.

28. This case presents common questions of law and fact that allow for common answers that readily predominate over individual issues. All Class members are individuals that do not have parking spots and are paying higher common charges than would be required had parking spots been leased at the market rate.

## STATEMENT OF CLAIM

### COUNT I

### BREACH OF FIDUCIARY DUTY

29. Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

30. The elements of a claim for breach of fiduciary duty are: "(1) defendant owed [plaintiffs] a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct." *Burry v Madison Park Owner LLC*, 84 AD3d 699, 700, 924 N.Y.S.2d 77 (1st Dept 2011]).

31. A Board of Managers of a condominium complex owes a fiduciary duty to condominium residents. A "Board is by definition in a 'fiduciary' relationship with the unit owners, because a 'fiduciary' is one who transacts business, or who handles money or property, which 'is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.'" *Board of Managers v. Fairway at N. Hills*, 193 A.D.2d 322, 325, 603 N.Y.S.2d 867, 869 (2nd Dep't 1993) (quoting Black's Law Dictionary 625 ["fiduciary capacity"] [6th ed 1990]).

32. Defendants breached their fiduciary duty toward residents of the Towers by ignoring the Towers by-laws in order to rent heavily discounted parking spots to a small ground

of residents at the financial expense of the great majority of residents.  Upon information and belief, Board members are among those who benefit from this policy.

33. "The business judgment rule protects a board from actions taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Goldman v 7 East 35th St. Owners, Inc.*, 2013 NY Slip Op 32310(U), 16 (Sup. Ct. NY Cty. Sept. 26, 2013).

34. However, Defendants cannot avail themselves of the protections of the business judgment rule.  The rental rates of Towers parking spots are so far below going market rates that the discrepancy is self-evident. So, Defendants cannot plausibly claim a good faith belief that the spots are being rented at market rates and that any error on their part was an "exercise of honest judgment."

35. Nor can Defendants argue that their decision to rent below market rates is in "legitimate furtherance of corporate purposes." The Towers' corporate purposes are defined in the bylaws, which prescribe that the spots be rented at market rates, not at subsidized rates.

36. Punitive damages for breach of fiduciary duty are appropriate when one of the following has been shown: "intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." *Don Buchwald & Assocs. v. Rich*, 281 A.D.2d 329, 330, 723 N.Y.S.2d 8, 9 (1st Dep't 2001).

37. Defendants are liable for punitive damages because they have engaged in "intentional or deliberate wrongdoing" that "willfully and wantonly disregards the rights of another."  Defendants *knew* (1) that they were renting parking spots below market rates, (2) that such violates the Towers' by-laws, and (3) that this harmed most Towers residents by causing higher common charges than would otherwise have been necessary.

## COUNT II

## BREACH OF CONTRACT

38. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

39. When they joined the Board, Defendant board members entered an agreement with Plaintiff and Class members to (1) safeguard the financial interests of Towers owners and residents and (2) treat all Towers owners and residents equally. These promises were part of the consideration for being elected to join the Board.

40. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

41. Defendant board members violated this covenant when they decided to enact and/or maintain policies that favored some Towers owners and residents—including, on information and belief, themselves—over others, because renting out parking spots below market has the effect of privileging the interests of parking spot holders over non-parking spot holders, as detailed above. This deprived the latter of the "fruits of the[ir] contract" with Defendants.

42. As a result, Plaintiff and Class members were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court grant the following relief:

a. An injunction compelling Defendants to begin renting all parking spots in the Towers at the market rate;

b. All applicable compensatory and punitive damages for Class members;

c. Prejudgment and postjudgment interest

d. Attorneys' fees and costs

e. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Dated: January 21, 2022                     Respectfully submitted,

                                                By:   */s/ Rony Guldmann*

                                                      LEE LITIGATION GROUP, PLLC
                                                      Rony Guldmann, Esq. (RG 5323)
                                                      148 West 24th Street, 8th Floor
                                                      New York, NY 10011
                                                      Tel.: (212) 465-1188
                                                      Fax: (212) 465-1181

                                                      *Attorneys for Plaintiff and the Class*